**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

A.K., a minor, by and through his parent, Katelyn Kendrick,

     Plaintiff,

v.

Denver Public Schools,

     Defendant.

---

## COMPLAINT

---

Plaintiff, A.K., a minor, by and through his parent, Katelyn Kendrick, hereby files this action, through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states as follows. This action seeks equitable relief and appropriate damages and costs.

### I.     JURISDICTION AND VENUE

1. This Court has jurisdiction to hear this matter pursuant to 20 U.S.C. §1415(i)(2)(A), 28 U.S.C. §1331, and 28 U.S.C. § 1367.

2. Plaintiff resides with his parent in Denver County, Colorado.

3. Defendant has its principal place of business in Denver County, Colorado.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Colorado.

1

## II.    PARTIES

5.    Plaintiff, A.K., is a minor student enrolled in Denver Public Schools (the "District" or "DPS").

6.    A.K. resides with his parent, Katelyn Kendrick ("Parent" or "Mx. Kendrick") in Denver, Colorado.

7.    A.K. is a child with a disability as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401(3), and Colorado's Exceptional Children's Educational Act ("ECEA"), C.R.S. §22-20-103(5)(a)(I).

8.    Defendant is a school district organized under the laws of the State of Colorado, C.R.S. § 22-30-101 *et seq.* and as defined by the ECEA at C.R.S. §22-20-103(22).

9.    Defendant is a "local educational agency" ("LEA") as the term is defined in 20 U.S.C. §1401(19)(A).

## III.    FACTUAL ALLEGATIONS

### A.  A.K.'s Background

10.    A.K. is 10 years old and is currently a fifth grader at Denver Green School Southeast ("DGSS"), a public elementary school within the District.

11.    Prior to starting at DGSS, A.K. attended Center for Talent Development at Greenlee, another District elementary school.

12.    A.K. attended school under a hybrid model at Center for Talent Development because of COVID-19.

13.    A.K. struggled with the transition to DGSS.

14. A.K. had a difficult time regulating his emotions, engaging in safe behaviors, using appropriate language, and following instructions.

**B. First Grade – 2021-2022 School Year**

15. A.K. started first grade in August 2021, in Ms. Lauren Epps' class.

16. During the fall of first grade, A.K. struggled with impulse control, staying on task, and unsafe physical interactions with peers.

17. On October 31, 2021, Ms. Epps emailed Mx. Kendrick to inquire about consent for A.K. to work with DGSS's psychology intern and consent to conduct a functional behavior assessment ("FBA").

18. Ms. Epps did not seek consent for a special education evaluation.

19. On November 1, 2021, Mx. Kendrick declined consent for the FBA because Mx. Kendrick believed that a special education evaluation needed to be done before an FBA could be done.

20. In November 2021, A.K. had three behavioral incidents that DGSS considered sexual in nature.

21. On January 2, 2022, Mx. Kendrick contacted Jessica Krichbaum, Lead Partner at DGSS, to inform her that A.K. was getting assessed for ADHD.

22. Mx. Kendrick requested that a Section 504 plan[1] be set up for A.K. if he was diagnosed with ADHD.

23. A.K. was diagnosed with ADHD on January 24, 2022, by Parker Pediatrics.

---

[1] A 504 plan is created pursuant to Section 504 of the Rehabilitation Act and provides a student with accommodations when they have a "physical or mental impairment" that "substantially limits one or more major life activities." 28 CFR 35.108 (a)(1)(i).

24.     That same day, Mx. Kendrick provided the Parker Pediatric Report to District employees, including Ms. Epps, Ms. Krichbaum, and Anna Arnold, school psychologist.

25.     On February 9, 2022, A.K. was placed on a 504 plan.

26.     According to A.K.'s 504 plan, he has difficulties transitioning from tasks and remaining focused on the task at hand.

27.     A.K.'s 504 plan included accommodations such as extra time, movement breaks, positive reinforcement, and small group testing.

28.     A.K.'s 504 plan was amended on April 7, 2022, to include frequent reminders to use the bathroom, scheduled bathroom breaks, and honoring requests to use the bathroom as soon as they are made.

29.     Even with the 504 plan, A.K. struggles with behavioral issues at school.

30.     Mx. Kendrick continued to receive many phone calls, emails, and texts from District employees regarding A.K.'s behaviors.

31.     Throughout the 2021-2022 school year, A.K. continued to struggle with impulsivity and unstructured portions of his day.

32.     Academically, A.K. did well. As a first grader, he read at a mid-second grade level. He performed at grade-level in all other content areas.

33.     The District did not initiate a special education evaluation during the 2021-2022 school year.

**C.  Second Grade – 2022-2023 School Year**

34.     A.K. started second grade in August 2022, in Ms. Rayna Maaliki's class.

35. A.K. started second grade with a 504 plan. His accommodations were unchanged from first grade.

36. A.K. continued to struggle with behavioral issues, including unsafe physical behaviors towards other students and adult staff.

37. He also struggled with attention and focus.

38. On November 28, 2022, A.K. tackled another student to the ground.

39. On November 30, 2022, A.K. hit a teacher in the stomach after being reprimanded for flipping off other students.

40. Instead of treating A.K.'s dysregulation as a manifestation of his disability, the District frequently punished A.K.

41. On December 1, 2022, the District created a behavior plan for A.K. The behaviors identified on this plan included: yelling at teacher, throwing things, having trouble staying on task and focused, searching inappropriate things on the computer, physical interactions with students, and lack of awareness of personal space.

42. Per this plan, A.K. was removed from the classroom after three reminders and any inappropriate physical or verbal interaction.

43. A.K. was also removed from class anytime there was physical harm to another student or District staff.

44. Even with the 504 and behavior plan, A.K. struggled with behavioral issues.

45. On December 13, 2022, A.K. eloped from the classroom.

46. On January 20, 2023, A.K. got in trouble for saying something inappropriate, putting his mouth on someone's hand and touching inappropriately.

5

47.	On January 24, 2023, A.K. made an inappropriate sexual comment.

48.	On January 26, 2023, A.K. pretended to have a knife and pretended to staff people with it.

49.	On January 30, 2023, A.K. threw paper towels into the urinal, overflowing it.

50.	On February 6, 2023, Ms. Lana Von Tersch, DGSS's Gifted and Talented Teacher, informed Mx. Kendrick that A.K. often did not complete his assignments and had been struggling with a lot of negative self-talk.

51.	On February 16, 2023, A.K. got in trouble for touching another student inappropriately and playing in the bathroom.

52.	On March 10, 2023, Ms. Arnold suggested that A.K. use a behavior tracker.

53.	The behavior tracker measured A.K.'s ability to follow classroom expectations, have a safe body and keep his hands to himself, use of kind words/no cursing, and appropriate computer usage.

54.	On March 22, 2023, A.K. started taking ADHD medication.

55.	On April 10, 2023, A.K. scratched Ms. Maaliki down her arms and climbed onto her back.

56.	On April 10, 2023, Mx. Kendrick received a call from Mr. Doyle, Restorative Justice Coordinator, during the school day.

57.	Mr. Doyle called Mx. Kendrick while he was actively reprimanding A.K. and asked Mx. Kendrick to reprimand A.K. over the phone.

58.	On April 11, 2023, Mx. Kendrick sent an email to District staff, including Ms. Daniels and Ms. Krichbaum, about this call from Mr. Doyle. Mx. Kendrick requested that Mr.

Doyle no longer reprimand A.K. as he makes their family feel unsafe and his approach is unproductive.

59.     In that same email, Mx. Kendrick informed District staff that they did not want a safety plan written until there was significant data demonstrating that A.K. was a disruption in the classroom. Mx. Kendrick requested that this observation by conducted by the school psychologist or a BCBA.

60.     Mx. Kendrick also asked whether A.K.'s 504 plan was actually being implemented. Mx. Kendrick stated that they had serious concerns that A.K. was not being given his accommodations.

61.     At this time, A.K. was experiencing significant emotional distress around attending school.

62.     On April 11, 2023, Ms. Krichbaum responded to Mx. Kendrick's email. Ms. Krichbaum stated that Dr. Arnold could conduct an observation. She also informed Mx. Kendrick a 504 plan "does not protect students from consequences that cause physical harm."[2]

63.     On April 12, 2023, Mx. Kendrick responded to Ms. Krichbaum's email, stating that if A.K.'s behaviors continued to increase, then a discussion about special education services and a special education evaluation would need to occur.

64.     On April 15, 2023, A.K.'s behavior plan was updated.

---

[2] While a 504 plan does not grant students immunity from disciplinary consequences, Section 504 provides protections to students with disabilities. These protections include the requirement that the District conduct a manifestation determination review ("MDR") before a disciplinary change in placement occurs for a student on a 504 plan. An MDR is a determination of whether a student's misconduct is caused by, or had a direct and substantial relationship to, the child's disability; or if the conduct in question was the direct result of the local educational agency's failure to implement the 504. See 34 CFR 300.530(e).

65.    On April 17, 2023, A.K. got a Student Support Services ("SST") call for hitting another student after that student stepped on his arm.

66.    The District did not initiate a special education evaluation during the 2022-2023 school year.

### D.  Third Grade – 2023-2024 School Year

67.    A.K. started third grade in August 2023, in Ms. Sam Sheppard's and Ms. Katie Sullivan's class.

68.    At the start of third grade, A.K. was testing at a first-grade level for mathematics. A.K. refused to complete work during math class and was frequently off-task and distracting peers instead of completing his work.

69.    Ms. Prudence Daniels, DGSS Lead Partner, informed Mx. Kendrick that A.K. was distracting himself and his peers with toys and his smartwatch during class.

70.    At the start of third grade, Ms. Daniels informed Mx. Kendrick that DGSS wanted to update A.K.'s behavior plan from the year prior.

71.    Mx. Kendrick requested that DGSS provide extra support to A.K. for math because he got distracted easily and had a difficult time with math.

72.    Ms. Daniels provided Mx. Kendrick with a copy of the behavior plan from the 2022-2023 school year and asked if a back-and-forth book would be helpful again for this year.

73.    Mx. Kendrick responded and stated that a back-and-forth book would be helpful. The back-and-forth book is used to increase communications between home and school and tracks A.K.'s behaviors for the day.

74.     On September 6, 2023, Ms. Sullivan informed Mx. Kendrick that A.K. completes his work quickly and had an especially difficult time staying in his seat that day and was going to play with another student. A.K. would then talk loudly across the room to the other student, making it difficult for others to complete their work.

75.     On September 12, 2023, A.K. said "show me your balls" and slapped another student's butt. A.K. was suspended in school for the remainder of the day on September 12.

76.     On September 13, 2023, similar to the week prior, Ms. Sullivan told Mx. Kendrick that A.K. struggled with staying on-task during group lessons and would often talk to others. Ms. Sullivan stated that this causes the entire lesson to move more slowly as she spends time redirecting. Ms. Sheppard noticed the same things in her class as well.

77.     On September 13, 2023, A.K. used a pencil to make a hole in Ms. Sullivan's wall.

78.     On September 27, 2023, Mx. Kendrick emailed A.K.'s school team about an upcoming meeting to discuss A.K. They also shared several concerns with A.K.'s school team related to A.K.'s suspension. Mx. Kendrick stated that A.K. overheard fourth graders state "show me your balls" on the playground while playing basketball, which is why he said it. Mx. Kendrick also stated that A.K. was adamant he did not touch anyone's penis and that would be wildly out of character for him.

79.     Mx. Kendrick shared concerns about DGSS's strike system and asked for the back-and-forth to be implemented.

80.     Mx. Kendrick reminded A.K.'s school team of A.K.'s 504 accommodations for his ADHD.

81.     On September 27, 2023, A.K. went to the office twice because he was distracting his peers.

82.     Ms. Daniels acknowledged that the strike system is punitive, but said it was "very difficult for others to focus when A.K. is blurting, making noises, or playing with items."

83.     Ms. Daniels also stated that A.K. had a "history of repeated incidents with touching or putting his face near/on private areas, inappropriate sexual language and internet searches."

84.     She stated that there had been multiple incidents of this nature each year since he had started at DGSS as a first grader.

85.     Ms. Daniels stated that there were "so many incidents that are unexpected and unsafe that [she sought] council for how to track and respond to these recurring events from the district Title IX officer."

86.     As one response, DGSS only permitted A.K. to use a single occupant restroom in the front office.

87.     Also on September 27, 2023, Mx. Kendrick responded to Ms. Daniels' email. They stated they were unaware of the other sexual instances mentioned by Ms. Daniels. Mx. Kendrick did not see these behaviors at home and wanted more information to understand the severity of what A.K. was being accused of.

88.     Less than two hours after Mx. Kendrick's email, Ms. Daniels provided the following summary, stating that she could be missing some events:

First grade:
11/5/21 Notes say butt incident with follow up from Ms. Anna
11/18/21 Putting his nose in another student's butt crack twice while sitting on the carpet.
11/30/21 There was a loud commotion in boys' bathroom. Teacher went in to check and group of boys found with pants down.
2nd grade:
11/28/22 Tackled student to the ground in the hall, placed face in student's crotch.
2/16/22 With one other student using oranges and banana to make inappropriate "sculptures".
Internet searches for sex, naked, other terms.
3rd grade:
9/12/23 (week of) Show me your balls!
Ran up behind boy and slapped his butt

89.     Later that day, A.K.'s stepfather informed Ms. Daniels that A.K. was extremely emotional when he got home from school that day, and that he felt like he could not do anything right. A.K.'s stepfather requested that DGSS help A.K. progress, rather than constantly punishing him.

90.     On September 28, 2023, Ms. Daniels told A.K.'s stepfather that A.K.'s "behavior incidents are happening so frequently that we aren't able to keep up or get ahead of them." She said that they want A.K. to be successful but that she was not sure what to do.

91.     Also on September 28, 2023, Mx. Kendrick responded to Ms. Daniels. Mx. Kendrick stated that, as they had said last year, that the District could go through the process of an entire IEP evaluation if needed. The District did not initiate a special education evaluation at this point.

92.     On October 4, 2023, Mx. Kendrick contacted A.K.'s school team because there had been no correspondence in A.K.'s back-and-forth book for the previous two days. They also stated that A.K. informed them that many of his accommodations were not being followed, including visual reminders, use of a token system, timer, and if-then language.

11

93.     On October 9, 2023, Mx. Kendrick observed A.K. in the classroom. They noticed that the only accommodation being implemented was the teacher checking his work after it was completed.

94.     On October 25, 2023, A.K. peeked into and then went into another student's stall in the communal student bathroom on a dare from two other students. A.K. was given a half-day of in-school suspension for this incident.

95.     The next day, on October 26, 2023, A.K. eloped from class and went into the communal restroom. A.K. had a camera with him and took a photo of a student next to the urinal. A.K. was given one day of out-of-school suspension for this incident. This out-of-school suspension is not reflected in A.K.'s attendance records.

96.     On October 26, 2023, Mx. Kendrick completed an administrative transfer request to send A.K. to another District school because they felt as though DGSS was improperly sexualizing A.K.'s behavior. Mx. Kendrick never received a response about the status of their transfer request.

97.     On November 6, 2023, Ms. Daniels informed Mx. Kendrick that A.K. had urinated all over the toilet seat in the nurse's office bathroom.

98.     On November 7, 2023, A.K. warmed a raisin in the cafeteria microwave until it caught on fire.

99.     On November 8, 2023, A.K. put a student in a chokehold, pinned him to the ground, and kicked him after he and other students took A.K.'s hat and refused to give it back.

100.    A.K. was given in-school suspension for the remainder of the day and one day of out-of-school suspension. A.K. spent November 9, 2023, suspended out of school. This out-of-school suspension is not reflected in A.K.'s attendance records.

101.    On November 10, 2023, A.K.'s parents met with A.K.'s school team to create a safety plan for A.K. The safety plan noted that A.K.'s behaviors included unsafe and disrespectful behavior in the restroom, halls, cafeteria, and playground.

102.    Per this plan, A.K. was required to have an adult escort him to the nurse's bathroom in the main office and required to eat lunch in the main office, alone.

103.    Additionally, the plan required adult eyes on A.K. at all times during recess.

104.    On November 13, 2023, Mx. Kendrick let the school team know that they were not okay with A.K. being excluded from the cafeteria during lunchtime. Mx. Kendrick did not receive a response to this email.

105.    On December 4, 2023, A.K. was suspended in-school.

106.    Mx. Kendrick followed up with the school team again on December 13, 2023, after A.K. reported eating lunch alone in the office multiple times.

107.    On December 14, 2023, Ms. Daniels confirmed that A.K. was eating lunch alone most days, though he had a friend join him in the office once or twice a week.

108.    She stated that DGSS was not able to find additional adult support for him in the cafeteria.

109.    Ms. Daniels stated that A.K. was having daily behavior incidents during lunch and/or immediately after when eating in the cafeteria.

110. A.K.'s outside therapist, Ms. Rhonda Wilson, informed A.K.'s school team that she was observing negative impacts on A.K.'s self-concept, impression of school, and sense of belonging because of his isolation at lunch.

111. On December 16, 2023, Mx. Kendrick responded to Ms. Daniels' email, requesting that A.K. be reintroduced to the lunchroom after winter break. They stated it was not A.K.'s fault that DGSS could not find enough adult staff to supervise the lunchroom.

112. Following winter break, A.K. was permitted to eat lunch in Ms. Arnolds and Ms. Lovins' classroom. He was permitted to invite a peer to join him for lunch if he met the goals on his tracker. Otherwise, he would eat without peers.

113. On January 4, 2024, Mx. Kendrick informed the school team that they wanted A.K. back in the cafeteria for lunch. The school team refused, and A.K. continued to eat lunch in isolation from his peers.

114. On January 18, 2024, Ms. Daniels informed A.K.'s parents that he had sent a threatening statement to Ms. Sullivan about his school computer having limited internet access. A.K. received one day of in-school suspension, completed on January 19, 2024.

115. Throughout the spring 2024 semester, A.K. continued to get in trouble for being off-task, disruptive during class, and engaging in physical aggression towards peers. Some examples include:

    a. On February 12, 2024, A.K. punched another student during recess and was suspended in-school for the remainder of the day.

    b. On April 4, 2024, A.K. was suspended in-school for cursing at other students and breaking classroom supplies.

    c. On April 26, 2024, A.K. was removed from the classroom because he was distracting classmates by shoving markers in his hat and drawing on his face. A.K. did not respond to redirection.

116. During the 2023-2024 school year, A.K. struggled with math and writing.

117. He received grades of 1s and 2s in writing during the 2023-2024 school year.[3]

118. He received mostly grades of 1s and 2s in math during the 2023-2024 school year.

119. Additionally, A.K. received all 1s and one 2 in homeroom, which assessed the following:

    a. Completes class assignments and homework in a timely and satisfactory manner;

    b. Participates in class activities as a productive and respectful group member;

    c. Self-assesses and sets goals for further learning; and

    d. Shows respect for self and others' ideas and property.

120. The only 2 was in "self-assesses and sets goals for further learning.

121. A.K. was suspended nine times during the 2023-2024 school year.

122. The District did not initiate a special education evaluation during the 2023-2024 school year.

---

[3] The District utilizes a 4-point grading scale, with a 1 being the lowest and a 4 being the highest. A 4 indicates the student exceeded expectations, a 3 indicates the student met expectations, a 2 indicates a student approached expectations, and a 1 indicates that the student partially met expectations.

### E. *Fourth Grade – 2024-2025 School Year*

123.     A.K. started fourth grade in August 2024, in Mr. Travis Ostrom's and Mr. Matt Meyer's class.

124.     A.K. continued to have a 504 plan in place. His accommodations largely remained unchanged.

125.     In October 2024, Mx. Kendrick collaborated with Mr. Ostrom and Mr. Meyer to create a computer tracker to monitor A.K.'s off-task computer usage. However, this system was never implemented.

126.     During the fall semester, A.K. had issues with impulsivity, off-task computer usage, and off-task behaviors during class.

127.     During the spring semester, A.K. continued to have the same issues with impulsivity, off-task computer usage, and off-task behavior during class.

128.     He also engaged in physical aggression towards peers more frequently.

129.     On February 12, 2025, A.K. launched a pencil at a student and then slapped them in the face when the student would not return the pencil. A.K. was suspended in-school for the remainder of the day.

130.     On March 4, 2025, A.K. was involved in a physical altercation with two other students during recess.

131.     On March 19, 2025, A.K. punched another student in the face at recess and was suspended out-of-school for the remainder of the day.

132.     On April 4, 2025, the District put A.K. on another safety plan that resulted in him being suspended any time he touches another student.

133. The "consequence ladder" of his safety plan indicates that anytime there is a physical incident not resulting in harm or where A.K. did not intend to cause harm, he receives in-school suspension.

134. Anytime there is a physical incident resulting in harm or intending to cause harm, A.K. receives out-of-school suspension.

135. Per this plan, A.K. needs adult supervision anytime he takes a bathroom break, requests to leave the classroom, and during recess.

136. On April 9, 2025, A.K. slapped another student in the face and was suspended out of school for the remainder of the day.

137. That same day, DGSS staff emailed A.K.'s parents and school team about restarting A.K.'s behavior tracker from the previous school year, with updated expectations for fourth grade.

138. Also on April 9, 2025, Mx. Kendrick requested that A.K. be evaluated for an Individualized Education Program ("IEP").

139. On April 11, 2025, Mx. Kendrick again requested a special education evaluation via email to District staff, including Ms. Krichbaum, Mr. Ostrom, and Mr. Meyer.

140. On April 14, 2025, A.K. punched another student in the face after that student kicked him in the face during morning recess. He was suspended out of school for the remainder of the day.

141. On April 15, 2025, A.K. was suspended in-school.

142.    On April 15, 2025, the District ambiguously informed A.K.'s stepfather that it would evaluate A.K. for special education in the future, and that its delay in response was due to the District needing to find answers.

143.    On April 25, 2025, A.K. was suspended in-school after he slammed a student's computer in a computer.

144.    During the 2024-2025 school year, A.K. continued to struggle with writing and math.

145.    In writing, he received scores of 2 for the entire school year.

146.    A.K. was evaluated by Dr. Paige Landau from Kimel Psychological Services in May 2025. Her report was finalized on May 29, 2025.

147.    Dr. Landau diagnosed A.K. with unspecified depressive disorder, unspecified anxiety disorder, and identified him as twice exceptional.

148.    Twice exceptional means that A.K. has significant strengths in one area (his verbal skills) with significant areas of vulnerability in another (related to his ADHD diagnosis).

149.    Dr. Landau also confirmed A.K.'s ADHD diagnosis.

**F.  2025 Summer**

150.    On June 17, 2025, Mx. Kendrick received a Prior Written Notice ("PWN") and Consent for Initial Evaluation from the District.

151.    During the 2025 summer, A.K. was evaluated by the District to determine his eligibility for special education. The evaluation included academic performance, social-emotional status, and health.

152.	The District's evaluation relied heavily on Dr. Landau's report and included large portions of Dr. Landau's evaluation in its report.

153.	On July 21, 2025, the District convened IEP team to discuss the results of A.K.'s evaluation and his eligibility for special education.

154.	The IEP team determined that the District's evaluation was sufficiently comprehensive and found A.K. eligible for special education under the disability category of Other Health Impairment ("OHI").

155.	The IEP team drafted an IEP for A.K. on July 21, 2025. A.K.'s IEP entitles him to 660 minutes per month of direct services and 63 minutes per month of indirect services.

**G. Fifth Grade – 2025-2026 School Year**

156.	A.K. started fifth grade on August 14, 2025.

157.	A.K. is now receiving special education in accordance with his IEP.

158.	A.K. has had virtually no behavioral issues.

159.	A.K. has not been suspended at all this school year. He has not engaged in aggressive physical behaviors towards peers this school year.

160.	A.K. feels supported by his special education teacher and enjoys meeting with her weekly.

161.	A.K.'s IEP supports his ability to access academics, including math.

**H. Emotional Impact on A.K.**

162.	A.K. struggled emotionally during his time at DGSS without an IEP.

163.	Ms. Rhonda Wilson, A.K.'s outside therapist, met with A.K. for counseling sessions from March 2023 to June 2025.

164. During this time, A.K. struggled with his self-esteem, sense of belonging, and self-advocacy.

165. During this time, A.K. was frequently bullied by peers.

166. A.K. is extremely sensitive and these instances of bullying further contributed to his negative perceptive of school.

## I. The Due Process Dispute

167. On May 15, 2025, Mx. Kendrick filed the Due Process Complaint on A.K.'s behalf, alleging that Defendant violated A.K.'s rights under the IDEA and ECEA, thereby denying him a free and appropriate public education ("FAPE") (Case No. EA 2025-0041).

168. Pursuant to the IDEA, Defendant is required to provide all disabled children within its boundaries with FAPE. 20 U.S.C. §1412(a)(1)(A). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017).

169. On May 27, 2025, Defendant filed its Response.

170. On May 30, 2025, Defendant filed a Notice of Insufficiency of Due Process Complaint and requested that the administrative law judge ("ALJ") dismiss the Due Process Complaint on the grounds that it did not provide a description of the nature of the problem, as required by 34 C.F.R. § 300.508(b)(5).

171. On June 4, 2025, the ALJ denied Defendant's request, finding that the Due Process Complaint contained a "comprehensive recitation of facts to fully understand the perceived problem and allow Respondent to defend its actions."

172.    On October 1 through 3, 2025, a hearing was conducted before the ALJ.

173.    Mx. Kendrick and Rhonda Wilson testified on behalf of A.K., the Complainant.

174.    Alicia Mund, Lead Special Education Instructor; Anna Arnold, DGSS School Psychologist; Prudence Daniels, Lead Partner and Co-Principal; Matt Meyer, A.K.'s Fourth Grade teacher; and Lauren Gourges, psychologist, who participated in A.K.'s IEP testified on behalf of the District, the Respondent.

175.    The parties submitted written closing arguments on October 29, 2025.

176.    On December 5, 2025, the ALJ issued the Agency Decision, dismissing all of A.K.'s claims and denying all requested relief.

177.    The ALJ concluded that Complainant did not meet their burden of proof to establish that Respondent violated the IDEA, either by neglecting its child-find obligation or denying FAPE to A.K.

178.    This was in error. The administrative record demonstrates that Respondent violated child-find and denied A.K. FAPE.

179.    In holding otherwise, the ALJ made numerous errors.

180.    First, the ALJ erroneously applied the IDEA's statute of limitations. The IDEA's statute of limitations requires parents to file a complaint within two years of the date they "knew or should have known about the alleged action that forms the basis of the complaint." 34 C.F.R. § 300.507(a)(2). This is known as a parent's reasonable discovery date.

181.    The ALJ did not make a finding on when Complainant's reasonable discovery date was nor a finding on whether the complaint was timely filed.

182.    Instead, the ALJ erroneously concluded that the statute of limitations required Complainant to demonstrate that there was a triggering event after May 15, 2023, two years before the complaint was filed, because Complainant did not plead any exceptions to the statute of limitations. Complainant was not required to plead exceptions to the statute of limitations for the ALJ to consider events occurring prior to the two-year statutory window. That is not how the statute of limitations works. The statute of limitations is not a rule of evidence and thus could not be used to limit consideration of evidence to events only considering within the two-year window.

183.    Second, the ALJ erroneously concluded that ADHD is not a *per se* trigger for a school district's child-find obligations. This conclusion misunderstands Complainants' argument and is contrary to the plain language of the IDEA.

184.    Complainant did not only argue that ADHD was a *per se* trigger for child-find. Complainant additionally argued that A.K.'s ADHD diagnosis *along with* the information that Respondent already knew about A.K. the date it received his diagnosis, triggered Respondent's child-find obligation.

185.    Additionally, Complainant contends that an ADHD diagnosis should be considered a *per se* trigger for child-find. ADHD is a specifically enumerated disability within the IDEA's Other Health Impairment ("OHI") category. 34 C.F.R. § 300.8(9). While not all students with ADHD ultimately qualify for special education, a school district cannot make this determination without conducting a special education evaluation.

186.    Third, the ALJ impermissibly made conclusions regarding the availability of accommodations under Section 504 of the Rehabilitation Act of 1973 and the sufficiency of

A.K.'s Section 504 plan. This was outside the scope of the ALJ's jurisdiction. The IDEA limits the decision of a hearing officer to whether a child received FAPE and whether a school district procedurally violated the IDEA. 34 C.F.R. § 300.513. The ECEA does not expand nor alter the hearing officer's jurisdiction beyond the jurisdiction conferred in the IDEA. 1 C.C.R. 301-8-6.02(7.5)(h)(i) ("hearing decisions shall be consistent with the requirements established by 34 CFR § 300.513.").

187.    Fourth, the ALJ misunderstood Complainant's child-find argument, stating that Complainant proposed November 10, 2023, as Respondent's trigger date solely based on emails from Ms. Maaliki and Ms. Daniels. This is blatantly incorrect. Complainant argued that the basis for the November 10, 2023, trigger date included (1) Respondent's knowledge of A.K.'s behavioral issues, including physical aggression, difficulty staying on-task, and distracting others up until that point; (2) the ineffectiveness of general education interventions and A.K.'s Section 504 plans; (3) A.K.'s academic struggles in the beginning of third grade; (4) concerns of A.K.'s teachers; (5) Mx. Kendrick's concerns.

188.    The Agency Decision is otherwise without legal or factual basis.

## IV. LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
*Review of Administrative Court Decision pursuant to 20 U.S.C. § 1415(i)(a)(2)*

189.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

190.    The IDEA permits any party aggrieved by the findings of the administrative court to seek review in federal district court. 20 U.S.C. § 1415(i)(a)(2).

191.    The allegations set forth herein state multiple grounds of error in the ALJ's decision below in EA 2025-0041.

23

192.    Consolidating these allegations, the ALJ's dismissal was unlawful under the IDEA and ECEA.

**SECOND CLAIM FOR RELIEF**
*Violation of 34 C.F.R. § 300.101 and 34 C.F.R. § 300.17*

193.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

194.    The IDEA's implementing regulations require Defendant to make FAPE available to all children with disabilities residing within its jurisdiction.

195.    A.K. is a child with a disability pursuant to 34 C.F.R. § 300.8.

196.    Defendant substantively denied A.K. FAPE by failing to provide an "IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 390.

197.    Defendant violated A.K.'s rights under 34 C.F.R. §§ 300.111, 300.301, and 300.323. Defendant's violations denied A.K. FAPE.

198.    Procedural IDEA violations deny a child FAPE when the violation (1) impedes the child's right to FAPE; (2) significantly impedes the parents' opportunity to participate in the decision-making process; or (3) deprives the child of educational benefits. 20 U.S.C. §§ 1415(f)(3)(E)(ii)(I)-(III).

199.    Defendant's procedural violations of the IDEA denied A.K. FAPE because (1) Defendant impeded A.K.'s right to FAPE by failing to timely evaluate his eligibility for special education and by failing to timely provide special education and (2) Defendant's IDEA violations deprived A.K. of educational benefits.

200.    Without special education, A.K. struggled to access general education.

**THIRD CLAIM FOR RELIEF**
*Violation of 34 C.F.R. § 300.111*

201.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

202.    The IDEA requires that the states identify, locate, and evaluate all children in need of special education and related services. This is known as "child find."

203.    Districts are responsible for conducting child find and identifying all IDEA-eligible students that reside in their jurisdiction.

204.    To determine whether a district violated child find, courts look at "the reasonableness of the delay" between "the date the child find requirement triggered due to notice of a likely disability" (the "notice date"), and "the date the child find duty was ultimately satisfied" (the "satisfaction date"). *Spring Branch Indep. Sch. Dist. v. O.W*., 961 F.3d 781, 793 (5th Cir. 2020).

205.    A district's child-find duty "is triggered when the school district has reasonable suspicion to believe that a student is a 'child with a disability.'" *D.T. v. Cherry Creek Sch. Dist. No. 5*, 55 F.4th 1268, 1274 (10th Cir. 2022).

206.    Defendant's child-find duty was triggered as early as January 24, 2022.

207.    Defendant continued to accrue more knowledge that put it on notice that A.K. may be a child with a disability during the 2021-2022, 2022-2023, 2023-2024, and 2024-2025 school years.

208.    A.K.'s ADHD diagnosis, behavioral issues, academic struggles, and ineffective general education interventions all put Defendant on notice that A.K. may be a child with a disability.

209.    A school district's satisfaction date occurs on the date it fulfills its child-find duty. *O.W.*, 961 F.3d at 793.

210.    Defendant satisfied its child-find obligation on July 21, 2025, when A.K. was found eligible for special education.

211.    Defendant's delay from January 24, 2022, to July 21, 2025, was unreasonable.

212.    Defendant's violation of its child-find obligation denied A.K. FAPE.

## FOURTH CLAIM FOR RELIEF
*Violation of 34 C.F.R. § 300.301*

213.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

214.    Either a parent or school district "may initiate a request for an initial evaluation to determine if the child is a child with a disability. 34 C.F.R. § 300.301(b).

215.    Once a school district receives a parental request for an evaluation, it is required to either conduct a full and individual evaluation in accordance with 34 C.F.R. § 300.301 or provide prior written notice denying the parent's request, 34 C.F.R. § 300.503(a)(2).

216.    Defendant's obligation to evaluate A.K. was triggered on January 24, 2022, when it received notice of A.K.'s ADHD diagnosis.

217.    Defendant did not initiate the evaluation process until June 17, 2025, when it requested Mx. Kendrick's consent to evaluate.

218.    Defendant's failure to initiate a special education evaluation for over three years denied A.K. FAPE.

## FIFTH CLAIM FOR RELIEF
*Violation of Colorado Exceptional Children's Education Act, C.R.S. § 22-20-101 et seq.*

219.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

26

220.    The Colorado Exceptional Children's Education Act ("CECEA") is a state-specific act that encompasses the same protections as the IDEA.

221.    As such, the violations of the CECEA are on the same grounds as the violations of A.K.'s rights under the IDEA.

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Find that Defendant violated state and federal law;

B. Find that Plaintiff is the prevailing party;

C. Reverse the ALJ's Order regarding all claims pled in Plaintiff's due process complaint;

D. Order Defendant to provide compensatory education to Plaintiff for the educational setbacks he has experienced due to Defendant's denial of FAPE;

E. Award Plaintiff his reasonable attorneys' fees and costs incurred in this action and the related administrative proceedings; and

F. Any other relief deemed that the Court finds equitable, appropriate, or just.

Respectfully submitted this 26th of February, 2026.

/s/Igor Raykin
Igor Raykin
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
igor@coloradolawteam.com

/s/Kaity Tuohy
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
kaity@coloradolawteam.com